## No. 422

## First Circuit

## GIORDANO v. GAUDE

(March 6, 1929. Opinion and Decree.)

L. V. Cooley, Jr., of Slidell, attorney for plaintiff, appellant.

A. S. Burns, of Ponchatoula, attorney for defendant, appellee.

ELLIOTT, J. An automobile belonging to Bennie Giordano, while being driven by his son Bennie Giordano, Jr., and another, belonging to E. J. Gaude, while being driven by his son Bruce Gaude, both of whom were minors, collided with each other on the Jackson Highway in the first turn out of the road, near Hammond. The plaintiff claims that the collision was entirely due to the fault of the driver of defendant's automobile and that he is entitled to recover of him $507.94 as damages to his automobile on said account.

The defendant for answer denies that his son was at fault, alleges that the collision was entirely due to the fault of plaintiff's son and claims of plaintiff in reconvention $11.00 as damages to his automobile as a result of the same. Plaintiff's demand was rejected and defendant's demand in reconvention against him was allowed.

The plaintiff has appealed.

The court fixed the amount of surety for the appeal at $20.00. The only effort at compliance with the order on the subject of surety, that we find in the record is a letter written by plaintiff's attorney to the Clerk of Court at Amite, La., dated February 6, 1928. This letter states to the Clerk of Court that there is in his hands $26.00 belonging to the plaintiff and that it will be well when he prepares the record for the appeal, to state in his certificate to the transcript that the sum of $20.00 is in his hands, serving in lieu of the ordinary bond. The certificate bears date March 2, 1928, and contains no statement such as the letter suggests. The question of surety for the appeal is not mentioned in the brief of appellee. There is no motion to dismiss, so we assume

that the sum of $20.00 is in the hands of the Clerk of Court for the purpose stated.

Plaintiff's son had been to Independence and was returning to Slidell. His road was through Hammond. As the road leading southward from Independence nears Hammond, a road turns out of the main north and south road and leads in an easterly direction toward Hammond. This road turning toward Hammond and leading thence on to Slidell is the route which plaintiff's son was following. Right in the corner of the road, made by this road turning toward Hammond, there is a building with yard, fence and tall shrubbery, which prevents anybody going south from seeing an automobile coming from Hammond as it approaches the junction with the main north and south road because as to him, it is behind this building, etc. The party coming from Independence cannot see a party coming from Hammond, until he gets to the place where the road turns in that direction. The same situation prevents an automobile coming from Hammond from seeing the approach of an automobile from the direction of Independence beyond the turn, because the building, etc., is in between them. This turn in the road is therefore a dangerous meeting place for automobiles, and every driver as he comes to it, no matter whether coming from Hammond or going there, or going on southward, or northward, should slow down and get his automobile well in hand until the turn has been made or. passed.

There is another building with a filling station in front of it, situated close up to and on the right hand side of the road going south, immediately· opposite the place where the road makes this turn. A person standing in front of this filling·station has a clear ·view up the road toward Independence, east toward Hammond, and southward along the road's continuing course in that direction. A witness on whose testimony we largely rely was standing in the front part of this filling station and saw the approach of plaintiff's son from the direction of Independence and that of defendant's son, from the direction of Hammond, and that they were going to meet each other in the turn. This witness has no apparent interest in the suit and he estimates the speed of plaintiff's car, as it came to the turn at about 40 miles an hour, which was as fast as the make of car he was driving could run. The evidence shows that a heavy rain was falling at the time. Plaintiff's son claims that he blew his horn as he came up to this turn in the road and slowed down to about 25 or 30 miles an hour. His idea for blowing his horn at the time was that anybody from Hammond and behind the house on his right would hear it and get out of the way. He may have done as he said, but the rain and the noise of his car prevented his horn from being heard. But according to the evidence he did not perceptibly slow down, until he reached and commenced to make the turn, and then it was· too late, as he had rendered a collision with defendant's car, which had also entered the turn and was turning southward at the same time that plaintiff's car was turning eastward, inevitable. Plaintiff's son contends that defendant's car hit him, but we are satisfied from the evidence on the subject that plaintiff's car did the striking. And we are further satisfied that the collision was due to the speed of plaintiff's car at the time; that it was ·being driven, as it entered and commenced to make the turn at a speed that was heedless and recklessly fast at that place, and due thereto, it was beyond control. We think the collision was entirely due to the fault of plaintiff's son and that if he had been driving with his car under proper

control, there would have been none. As for the car belonging to defendant, we are satisfied that it was being driven at the time at a moderate speed, with due care for the dangerous place and the rain that was falling, that the car was under proper control, and that as to him the collision was unavoidable.

The judgment appealed from is correct.

Judgment affirmed. Plaintiff and appellant to pay the costs in both courts.